UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>IBRAHIM NASR IBRAHIM,<br><br>Defendant. | 4:21-CR-40070-KES<br><br>ORDER DENYING MOTION<br>FOR COMPASSIONATE RELEASE |

Defendant, Ibrahim Nasr Ibrahim, filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 62. Plaintiff, the United States of America, opposes the motion. Docket 64. Ibrahim filed a reply to the United States' opposition. Docket 65. For the following reasons, Ibrahim's motion for compassionate release is denied.

## BACKGROUND

On May 24, 2022, Ibrahim plead guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C §§ 841(a)(1) and 846. Docket 36. On October 31, 2022, the court sentenced Ibrahim to 60 months in custody followed by three years of supervised release. Docket 53. His projected release date is set for June 30, 2024. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Feb. 7, 2024) (enter BOP register number 46867-509). Ibrahim is currently incarcerated at FCI Allenwood Low, a low security penitentiary in Allenwood, Pennsylvania. *See id.*; *FCI Allenwood Low*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/alf/ (last visited Feb. 9, 2024).

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). One narrow exception is the First Step Act (FSA), passed by Congress in 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires both "extraordinary and compelling reasons" to warrant a sentence reduction and the defendant not pose a danger to the public. USSG § 1B1.13(a)-(b). The policy statement was amended on November 1, 2023, to reflect the FSA's empowerment of federal courts to adjudicate defendant-initiated motions for compassionate release. U.S.S.G. § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expands the list of extraordinary and compelling reasons justifying compassionate release from federal detention. *See id.; 2023 Amendments in Brief*, U.S. Sent'g

Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited Feb. 9, 2024).

## I.  Administrative Exhaustion

Before the FSA's passage, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Ibrahim submitted a compassionate release request to staff at USP Atlanta on May 24, 2023. Docket 62-1 at 4. The request was denied by the warden on May 25, 2023. *Id.* The record does not indicate that Ibrahim exhausted his administrative remedies by appealing the Warden's denial. But the government has not raised this issue and has thus waived the argument that Ibrahim failed to exhaust his remedies within the BOP. *See United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (characterizing 18 U.S.C. § 3582(c)(1)(A)'s procedural requirement as a "mandatory claim-processing rule" that "must be enforced so long as the opposing party properly raises it."). Thus, the court will review the merits of Ibrahim's motion.

## II.  Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to describe what "should

3

be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G. § 1B1.13(b)(1)–(4), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an usually long sentence, served at least 10 years, and a change in law produces a gross disparity between the sentence being served and the sentences likely to imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

  Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

Ibrahim argues that his health conditions, U.S. Immigration and Customs Enforcement's (ICE) detainer, denial of good time credits, and family circumstances are extraordinary and compelling reasons warranting his early release from prison. Docket 62 at 2-4. Therefore, the court analyzes Ibrahim's claims under the medical circumstances category, U.S.S.G. § 1B1.13(b)(1), the category for compelling family circumstances, U.S.S.G. § 1B1.13(b)(3), and the catchall category, U.S.S.G. § 1B1.13(b)(5). The court does not consider the categories for victimization by correctional staff or an unusually long sentence, because Ibrahim does not argue that either circumstance applies here. U.S.S.G. § 1B1.13(b)(4), (6). Neither does the court consider Ibrahim's age in combination with time served, because he is not 65 years old. *See* Docket 50 at 2; U.S.S.G. § 1B1.13(b)(2).

### A.   **Medical Circumstances of the Defendant**

The guidelines identify four situations in which the medical circumstances of the defendant constitute an extraordinary and compelling reason warranting early release. The subcategories of medical circumstances warranting early release are: first, where the defendant has a terminal illness. U.S.S.G. § 1B1.13(b)(1)(A). Second, where the defendant suffers from a serious physical or mental condition that substantially diminishes the defendant's ability to provide self-care within the correctional facility. U.S.S.G. § 1B1.13(b)(1)(B). Third, where the defendant has a condition that requires long-term or specialized care that is not being provided and without which the defendant's health may seriously deteriorate. U.S.S.G. § 1B1.13(b)(1)(C). Fourth, where the defendant is in a correctional facility at imminent risk of a

public health emergency or outbreak of infectious disease, the defendant is especially at risk, and that risk cannot be adequately and timely mitigated. U.S.S.G. § 1B1.13(b)(1)(D).

### 1. Terminal illness

Terminal illness, or a "serious and advanced illness with an end of life trajectory[,]" is an extraordinary and compelling reason for early release. U.S.S.G. § 1B1.13(b)(1)(A). "A specific prognosis of life expectancy . . . is not required." *Id.* Ibrahim does not allege that any of his health problems are terminal illnesses. *See generally* Docket 62. Additionally, Ibrahim's medical record support that he is not on an end-of-life trajectory. *See generally* Docket 63. Thus, terminal illness is not an extraordinary and compelling reason justifying Ibrahim's compassionate release.

### 2. Substantially diminished ability to provide self-care.

An extraordinary and compelling reason for early release exists where due to a serious medical condition, cognitive impairment, or aging, the defendant presents with a substantially diminished ability "to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13(b)(1)(B). Where a defendant can complete the tasks of daily living and provide self-care, courts have found that early release is not appropriate. *See United States v. Korn*, 2020 WL 1808213 at *6 (W.D.N.Y. Apr. 9, 2020) (noting that because defendant was "able to walk with a cane, dress, bathe, eat, and perform . . . activities of daily living independently[,]" his medical condition did not substantially diminish his ability to provide self-care); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 682 (N.D. Cal. 2019) (denying motion for compassionate release

because defendant was capable of independently completing activities of daily living).

Ibrahim's motion does not explain how his self-care is limited by his medical problems, and the medical records provided to the court do not establish that Ibrahim's conditions substantially diminish his ability to provide self-care within the correctional facility. *See generally* Dockets 62 and 63. Thus, no extraordinary and compelling reason for compassionate release exists on the grounds that Ibrahim is impaired in his ability to care for himself while in prison.

### 3. Long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration or death

Under the previous version of the guidelines, there existed no defined subcategory of medical circumstances justifying compassionate release for situations where necessary medical care is not being provided while incarcerated. The updated guidelines define as an extraordinary and compelling reason circumstances where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C), amend. 814.

Ibrahim asserts that while he has been incarcerated, his

> health has deteriorated. As documented in his medical record he suffers from heart palpitation, urinary infection, sleep apnea, knee pain, major depressive disorder, anxiety. Attention Deficit Hyperactive Disorder (ADHD) and post-traumatic stress disorder (PTSD).(EXBIT 3). Mr. Ibrahim takes medication for his heart palpitation and urinary infection but no treatment for his

7

>psychology problems has been contemplated.(EXBIT 4). But the facility ignores his plight.(EXBIT 5). Not being treated reasonably and in a reasonable time trigger Mr. Ibrahim's PTSD resulting in nightmares about his life through the war in Iraq.

Docket 62 at 2.

Ibrahim's medical records support that he suffers from heart palpitation, anemia, an unspecified abnormal heartbeat, unspecified symptoms involving the genitourinary system, a skin change, nasal congestion, and "[d]izziness and giddiness." Docket 63 at 5, 34, 39, 114. Ibrahim's medical records do not support the finding that he suffers from knee pain, sleep apnea,[1] major depressive disorder, Attention Deficit Hyperactive Disorder (ADHD), or post-traumatic stress disorder (PTSD). *See generally id.* Ibrahim's medical records confirm that he had heart palpitation and rapid and irregular heart rate on November 19, 2022, December 5, 2022, and in May 2023. *Id.* at 5, 39, 87. His medical records state he was transferred to health services for further testing and evaluation of his heart condition. *Id.* at 5. On June 1, 2023, his records state an electrophysiology appointment was pending but gives no update as to whether the appointment occurred. *Id.* at 85. As of July 10, 2023, Ibrahim received Metoprolol Tartrate to manage his heart condition. *Id.* at 79.

Ibrahim's medical records confirm he has unspecified symptoms and signs involving the genitourinary system. *Id.* at 91. His American Urological Association (AUA) symptom score was 33, which is severe. *Id.* His Prostate-

---

[1] Ibrahim's medical records state he wanted to be tested for sleep apnea because he snores frequently, which causes people to be mad at him. Docket 63 at 98. The records do not confirm he was tested for this condition.

8

specific antigen (PSA) is normal. *Id.* He is prescribed Tamsulosin for his genitourinary system condition, but he believes it is not providing relief. *Id.* Ibrahim reported he is very unhappy about his quality of life due to his urinary symptoms. *Id.*

The record supports that Ibrahim's medical conditions are being appropriately managed at FCI Allenwood. *See generally* Docket 63. Thus, no extraordinary and compelling reason for compassionate release exists on the grounds that proper medical care is not being provided to Ibrahim.

### 4. Ongoing outbreak of infectious disease or public health emergency where the defendant is especially at risk and the risk cannot be adequately mitigated

Under the amended sentencing guidelines, an extraordinary and compelling reason for compassionate release exists where (1) the defendant is housed at a correctional facility at imminent risk of an ongoing outbreak of infectious disease or public health emergency, (2) the defendant is especially at risk, and (3) such risk cannot be adequately mitigated in a timely manner. U.S.S.G. 1B1.13(b)(1)(D).

At this point, the risk of an imminent outbreak of COVID-19 at FCI Allenwood has lessened as compared to the early days of the COVID-19 pandemic. As of January 16, 2024, the BOP reported no open cases of COVID-19 at FCI Allenwood. *See Inmate COVID-19 Data*, Fed. Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Feb. 9, 2024). The federal government has declared an end to the Federal COVID-19 Public Health Emergency. *End of the Federal COVID-19*

9

*Public Health Emergency*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html (last updated Sept. 12, 2023). The court recognizes that seasonal elevations of COVID-19 infection over the winter months are occurring across the United States and are likely impacting correctional institutions such as FCI Allenwood. *See CDC Continues to Track the Growth of JN.1*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/respiratory-viruses/whats-new/JN.1-update-2023-12-22.html (last updated Dec. 22, 2023). But, the court does not find that this seasonal elevation in COVID-19 infections qualifies as an imminent risk of an ongoing outbreak of infectious disease or public health emergency.

Even if Ibrahim was housed where there was an imminent risk of outbreak or public health emergency, Ibrahim is not at a particular risk for severe complications from COVID-19 or another public health emergency. When considering compassionate release motions in the context of the COVID-19 pandemic, courts have required an inmate to show both a "particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Freeman*, 2021 WL 1758966, at *3 (D. Minn. May 4, 2021), *aff'd*, 2021 WL 5365239 (8th Cir. May 19, 2021) (citations omitted). Ibrahim is unable to show a particularized susceptibility to the disease or a particularized risk of contracting the disease at his prison facility, particularly in light of his refusal to be vaccinated and his history of having COVID-19. Docket 63 at 9, 29.

10

Further, Ibrahim has not shown that any potential risk of COVID-19 cannot be adequately mitigated, especially because he refused to be vaccinated for COVID-19. *Id.* at 9, 29, 36. This court has observed that an inmate's refusal to take a COVID-19 vaccination led it to conclude the inmate was "not overly concerned about protecting himself against serious illness." *United States v. Williams*, No. 4:18-CR-40134-01-KES, 2022 WL 2208795, at *5 (D.S.D. June 21, 2022). Other courts in the Eighth Circuit have reached the same conclusion. *See United States v. Lewis*, 2022 WL 2181077, at *4 (W.D. Ark. June 16, 2022) ("Although Defendant has a right to refuse the COVID-19 vaccine, he cannot do so and then rely on his risk of suffering serious complications from contracting COVID-19 to obtain compassionate release."); *United States v. Jackson*, 2021 WL 806366, at *2 (D. Minn. Mar. 3, 2021) ("While he is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk."); *United States v. Gonzalez Zambrano*, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the court finds it would be inappropriate to reward her refusal to protect herself by granting her release."). Ibrahim has not shown extraordinary and compelling circumstances required for release based on COVID-19.

The court finds that Ibrahim is not suffering from a terminal illness, his medical problems do not substantially diminish his ability to provide self-

care, FCI Allenwood is providing Ibrahim with necessary medical care, and COVID-19 does not present a risk to Ibrahim that cannot be adequately and timely mitigated. Considering the above, the court finds that Ibrahim's medical circumstances do not clear the high bar necessary to warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

### B. Family Circumstances, Note 3

To justify compassionate release under the family circumstances category, USSG § 1B1.13 Note 3, the defendant must demonstrate one of the following: (1) death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition; (2) incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner; (3) incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent; and (4) defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving an immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver.

Ibrahim contends his incarceration "shutters his business and precludes support to his family[,]" including his elderly mother and two children. Docket 62 at 3. While the court is sympathetic to Ibrahim's family situation and the strain caused by his incarceration, those difficulties do not constitute an

12

extraordinary and compelling reason warranting Ibrahim's early release.

### C. Catch-all Category, Note 1(D)

The court analyzes Ibrahim's next arguments under the catch-all provision, U.S.S.G. § 1B1.13(b)(5). The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D).

Ibrahim claims "[t]he imposition of mandatory ICE detention following the completion of Mr. Ibrahim's sentence increase his incarceration" and his "alienage precludes him from applying the earned credits towards his early release. See 18 U.S.C. Section 3632(d)(4)(E) and 28 C.F.R. Section 523.44." Docket 62 at 3. Ibrahim's arguments, while correct statements, are irrelevant for granting compassionate release. Ibrahim's situation of having an ICE detainer and inability to use earned credits towards his release is not a unique or extraordinary reason to grant compassionate release.

### III. Sentencing Factors of § 3553(a)

The § 3553(a) sentencing factors confirm that compassionate release is not warranted. The first factor the court considers is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Ibrahim was a part of a conspiracy to distribute very large quantities of methamphetamine, which involved him obtaining addresses in Sioux Falls where methamphetamine packages could be sent and providing storage for large drug shipments. See Docket 50 at 5-6. During the course of the conspiracy, Ibrahim possessed large amounts of cash,

arranged for transactions between other co-conspirators, provided false identifications, and possessed firearms. Id. He was responsible for trafficking 4.52 kilograms of methamphetamine. Id. at 9.

Ibrahim's personal characteristics are more favorable to his motion for compassionate release than the offense conduct itself. Ibrahim's criminal history score was 1. Id. at 11. He was born in Baghdad, Iraq, where he reported he had a good childhood. Id. at 12. Ibrahim reported his father was killed in the war in 2003, and he still remains close to his mother and five siblings, who continue to reside in Iraq. Id.

Ibrahim moved to Sioux Falls, South Dakota in 2010. Id. He reported moving to Sioux Falls after being advised of a potential job opportunity at John Morrells. Id. Ibrahim resided in Sioux Falls for approximately one year before moving to Alaska, where he worked on a fishing boat for approximately one year. Id. at 12-13. Ibrahim then returned to Sioux Falls, and he has resided in or around Sioux Falls since that time. Id. at 13.

Ibrahim began a relationship with LaKeisha Ibrahim (Abernathy), and they were married in October 2021. Id.. Together they share one child and LaKeisha has a child from another relationship, whom Ibrahim reported he has raised like his own child. Id. Following his release from custody, Ibrahim would like to return to his family in Worthing. Id.

The next factor the court considers is the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). While Ibrahim has

14

no significant criminal history and an admirable dedication to his family, the seriousness of the offense demands a sentence that reflects its gravity. Granting compassionate release at this time would not promote respect for the law or provide just punishment. The PSR shows that Ibrahim was part of an exceptionally large methamphetamine distribution conspiracy. See Docket 50 at 3–9. Thus, the court's interest in just punishment demands that his sentence continue to reflect the gravity of his offense.

The remaining § 3553(a) factors do not support a sentence reduction. If the court were to grant compassionate release, similar conduct in others would not be deterred because Ibrahim's punishment would not be severe enough to act as an effective deterrent. See 18 U.S.C. § 3553(a)(2)(B). Moreover, reducing Ibrahim's sentence would not protect the public from further crimes if he resumed his drug trafficking enterprise. See 18 U.S.C. § 3553(a)(2)(C). The court finds the § 3553(a) factors weigh against Ibrahim and confirm that early release from custody is not warranted.

## CONCLUSION

Ibrahim failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for relief under the First Step Act (Docket 62) is denied.

Dated February 12, 2024.

                              BY THE COURT:

                              /s/ Karen E. Schreier
                              KAREN E. SCHREIER
                              UNITED STATES DISTRICT JUDGE